STEPHEN J. CRONAN *vs.* HENRY HORNBLOWER & others.

Suffolk.   March 26, 1912. — May 21, 1912.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DECOURCY, JJ.

*Agency,* Scope of authority.   *Stockbroker.   Custom.*

In an action against a stockbroker by a customer for the amount of a dividend upon certain shares of stock, which had been placed by the plaintiff in the hands of the defendant for sale at a certain price and which the defendant had sold with the "dividend on" after the dividend had been declared and

before it was payable, the defendant contended that by a custom of brokers, of which he introduced evidence, he had authority in such a case to sell with the "dividend on," and also contended that in order to carry out the plaintiff's instructions to sell the stock for the price named it was necessary to sell with the "dividend on." The judge instructed the jury in substance that, if they found that there was such a custom as was testified to or if they found that it was necessary for the defendant in order to carry out the instructions of the plaintiff to include the dividend in the sale, they must return a verdict for the defendant. The jury found for the plaintiff. *Held,* that the instructions were, at the least, sufficiently favorable to the defendant, and that the above questions were settled against the defendant by the verdict, the finding of the jury making it unnecessary to consider whether the alleged custom, if found to exist, would have been valid.

MORTON, J.  This is an action against the members of a firm of stockbrokers, to recover the dividend on sixty-one shares of the common stock of the Draper Company which stood in the defendant's name at the time the dividend was declared, though admitted then to belong to the plaintiff. The sixty-one shares were part of one hundred shares belonging to the plaintiff, which in December, 1909, he gave the defendants an order to sell for him at $170, or better, per share. Subsequently, about February 1, 1910, he raised the price to $175 a share, or better. The defendants sold thirty shares, and as a matter of convenience had a certificate for the remaining seventy shares issued to them, giving the plaintiff a receipt therefor. Subsequently they sold nine more. The dividend was declared on June 20, 1910, and was made payable on July 1 to stockholders of record on June 20, and the sales already referred to were made before the dividend was declared. The remaining shares were sold after the dividend was declared and before it was payable, and were sold "dividend on," that is, the purchasers were to have the dividend. Neither the plaintiff nor the defendants knew that a dividend had been declared. The dividend in 1909 had been declared on the fourth Tuesday in June, and the defendants supposed that it would be declared in 1910 at about the same time in the month. The plaintiff gave no authority to the defendants to sell the stock "dividend on" after it had been declared, and claimed that the dividend belonged to him. He expected, as he testified, that as to the stock sold before a dividend was declared the purchaser would be entitled to the dividend if one was subsequently declared. The defendants contended that according to the custom and usages of brokers,

of which they introduced evidence, when stock was left by a customer to be sold at a given price and a dividend was subsequently declared, the limit set by the customer was automatically reduced by the amount of the dividend and that this gave them the authority, in the absence of any express directions by the plaintiff in regard to the matter, to sell with the "dividend on." They also contended that in order to carry out the instructions of the plaintiff and sell the stock for the price named by the plaintiff, it was necessary for them to sell with the "dividend on;" and that on that ground also they had a right to sell the stock as they did. There was a verdict for the plaintiff, and the case is here on exceptions by the defendants to the refusal of the presiding judge * to give certain rulings that were requested.

It was conceded, and the presiding judge so instructed the jury, that ordinarily the sale of stock would not carry with it dividends that had been previously declared. But he further instructed them, as in substance requested by the defendants, that if they found that it was necessary in order to enable the defendants to carry out the instructions of the plaintiff and make a sale at the price named by him to include the dividend, then the authority to sell at the price named would include authority to transfer the dividend and the defendants would be entitled to a verdict in their favor.

He still further instructed them, also in substance as requested by the defendants, that "where a customer sends an order to a broker engaged in an established market or trade for a deal in that trade, he confers authority on the broker to deal according to any well-established usages in that market or trade," and "a customer is bound by the established customs of trade in the dealing which he employs brokers to carry on for him;" and that if the defendants had paid the plaintiff the prices to which, in view of the usages and customs, if any, which the jury found entered into the transaction he was entitled, then likewise the defendants would be entitled to a verdict.

We think that these instructions were all that the case called

---

* *Hitchcock*, J. Among the requests refused were requests for rulings that the jury must find for the defendants, that the defendants were authorized to deliver the dividend and that the jury must find that the alleged custom existed.

for and were sufficiently favorable, to say the least, to the defendants, and we see no error in regard to the instructions that were given and refused.

It was for the jury to say whether there was such a custom or usage as testified to, and also whether in making the sale which the defendants made it was necessary in order to carry out the instructions of the plaintiff to include the dividend.

In view of the finding of the jury it is not necessary to consider whether the custom testified to would be a valid custom.

*Exceptions overruled.*

*H. W. Ogden,* (*H. H. Bond* with him,) for the defendants.
*J. W. McConnell,* for the plaintiff.

