SETH A. FOWLE, administrator, *vs.* JOSEPH H. WARD.

One to whom shares of stock had been pledged as collateral security, sold them wrongfully, but for the full market price at the time. Upon a bill in equity to redeem the shares, *Held*, that the plaintiff was entitled to be placed in the same position as if the sale had not been made; and that the defendant might be charged with the value of the shares at the time of filing the bill.

BILL IN EQUITY, filed by Seth W. Fowle, the plaintiff's intestate, to redeem twenty shares of Worcester & Nashua Railroad stock from a pledge to the defendant, on which the defendant had received several dividends. The bill prayed for an account and for an order for the transfer and surrender of the shares, on payment of what should be adjudged justly due thereon from the plaintiff, and for other relief.

At the hearing, before *Gray*, J., upon bill, answer, replication and evidence taken by a commissioner, it appeared that the twenty shares were part of a lot of eighty shares belonging to the intestate, the certificates whereof, indorsed in blank, he delivered to a broker whom he employed to borrow $3200 for him. This broker employed a sub-broker to find the money. The sub-broker pledged the eighty shares to the defendant to secure a

cash advance of $3200 and an old debt of his own to the defend-ant of about $400, making together $3590.97, for which amount the sub-broker gave a borrowed and received memorandum to the defendant, payable on demand, signed by himself " trustee," with the eighty shares as collateral security, and made a verbal con-tract with the defendant as to the rate of interest and duration of the loan.

This transaction was made under such circumstances that the court held that the defendant had sufficient notice to affect him with knowledge of the sub-broker's want of authority to pledge the stock as security for more than the $3200, advanced in cash at the time, and a certain rate of interest.

The plaintiff's intestate received from his broker only $3000 of the money, and this not at one time ; and having after some delay ascertained that the stock was in the defendant's hands, he notified him that the stock belonged to him, the intestate ; but the defendant refused to recognize any but his own and the sub-broker's interest in the stock. An arrangement was afterwards made by which the defendant transferred sixty shares to the plaintiff's intestate on his paying $3000, and giving an obliga-tion to save the defendant harmless, leaving the question of the rights of the parties in connection with the remaining shares to be settled afterwards. The defendant never recognized any ownership or interest of the plaintiff's intestate in the stock, and always refused to come to any adjustment as to the twenty shares, except upon the basis of the plaintiff's admitting the validity of the pledge as made to him, and paying the balance of his de-mands against the sub-broker, he always claiming that at the time of the transaction he had no knowledge that any one but the sub-broker had an interest in the stock. Some time before the filing of the bill, the plaintiff's counsel requested the defend-ant to come to an adjustment with him, to which the defendant replied in writing that he had sold most of the shares pledged to him, to reimburse himself, but that he had a small balance of money, with three shares of the stock, in his hands, which he was ready to hand to the sub-broker or to deliver upon his order at any time.

The sales of the said seventeen shares by the defendant were adjudged by the court to have been unlawful and void as against the plaintiff; but the prices obtained were admitted to be the market value of the stock at the times of the sales. There was no evidence that the plaintiff's intestate ever offered to redeem the shares by the payment or allowance of anything except the $3000, for which the defendant had a just claim on the stock as against him, till the filing of the bill which contained such an offer.

A final decree was entered charging the defendant, among other things, with the agreed market value of the seventeen shares sold, at the time of the filing of the bill, with interest since, and with the dividends declared on the shares after their sale and before the filing of the bill, with interest upon them.

The defendant appealed from so much of the decree as fixed the time when the value of the seventeen shares sold was to be determined.

*H. L. Hazelton,* for the defendant.

*J. L. English,* for the plaintiff.

AMES, J. The only question raised upon this appeal is as to the propriety of adopting the time of the filing of the bill as the period for the valuation of the shares with which the defendant is to be charged.

If the defendant by his own wrongful act has incapacitated himself from returning the seventeen shares which he has undertaken to dispose of, he cannot complain if he is required to replace everything *in statu quo,* so far as it can be done. If the sale was unlawful and void as against the plaintiff, he is entitled to all the advantages that he could have had from the shares if they had not been sold at all. Among those advantages is the right of judging for himself whether to keep or to sell them, and as to the best time to sell, if he should see fit to sell them. To place him substantially in the same position as if the wrongful act of the defendant had not occurred, would require that he should recover for damages a sum of money which would enable him to purchase seventeen new shares to replace those which have been taken from him, with such additional sum as would indemnify

him for the dividends which he has lost since the sale, and also an equitable allowance for interest. It is in vain for the defendant to insist that when he made the sale he obtained the full market price of that time. The plaintiff was not a party to that sale, and was not bound by it. The defendant had no right to make the sale. All that he could lawfully do was to hold the shares, and have them forthcoming for the true owner on demand. But instead of so doing, he by his own fault has caused the plaintiff to lose them, and the only equitable remedy is to replace them, or to enable the plaintiff to do so for himself. *Sewall* v. *Boston Water Power Co.* 4 Allen, 277. *Emery* v. *Parrott*, 107 Mass. 95.

The argument for the defendant and the authorities cited on his behalf do not appear to us to be applicable to the circumstances of the case. In the common law action of trover, the rule of damages is undoubtedly the value of the chattel in controversy at the time of the conversion. So also in an action for non-fulfilment of a contract to deliver stock, the measure of damages would ordinarily be the value at the time when it should have been delivered, or if no time of delivery had been named in the contract, the time when it was demanded. But in the case before us the plaintiff seeks, and is entitled to have, the specific equitable remedy of being replaced in his original position. His claim is not damages for breach of a contract or for a wrongful conversion of property, but to compel the reconveyance of shares which ought to be in the defendant's hands at this moment. 2 Story Eq. § 1263.

We see no ground for saying that there has been such laches on the plaintiff's part as to interfere with his right to maintain the present suit. It appears that before selling the shares the defendant had full notice of the plaintiff's claim, and of the defect of his own title. After assuming the responsibility of acting upon his own judgment, and setting the plaintiff at defiance, the defendant is in no position to complain that the suit was not commenced at once. *Decree affirmed.*