EDWARD J. STEWART vs. JOHN JOYCE & others.

Suffolk.    November 19, 1909. — March 4, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Damages*, In suit in equity to rescind sale for fraud.    *Sale*, Rescission.

Where, in a suit in equity to rescind a sale to the defendant by the plaintiff of
    shares of the capital stock of a corporation because the sale was procured by
    fraud on the part of the defendant, it appears that the sale should be rescinded,
    but that the defendant, because he had parted with the shares before the com-
    mencement of the suit, is unable to return them to the plaintiff, and the court
    of equity therefore retains jurisdiction of the case for the purpose of awarding
    to the plaintiff the damages which he suffered from the defendant's fraud, the
    amount of such damages is the difference between the value of the shares on the
    day when the sale was made and the amount paid by the defendant to the plain-
    tiff for them, with interest at six per cent thereon from the date of the sale to
    the date of the final decree.    *Whether* a different rule would apply and, if so,
    what rule, in a case where the defendant after the filing of the bill had disabled
    himself from returning the shares to the plaintiff, here was not considered.

BILL IN EQUITY, filed in the Supreme Judicial Court on Jan-
uary 18, 1906, and amended by the filing of a substituted bill
on July 18, 1906, to rescind a sale of shares of the capital stock
of the Gillette Safety Razor Company, a corporation organized
under the laws of the State of Maine, made by the plaintiff to
the defendant Heilborn, alleged to have been acting for himself
and the other defendants, on July 11, 1904, at $1 a share, when
the fair value was alleged to have been $10 a share, such sale
being alleged to have been induced by false and fraudulent rep-
resentations made to the plaintiff by the defendants.

The case previously was before this court, having been re-
served by a single justice upon the pleadings and the report of
a master and exceptions thereto, and is reported in 201 Mass.
301.    After the issuance of a rescript in accordance with that
decision the case was heard by *Braley*, J., as to the final decree.

It appeared that the defendant had no stock with which to
satisfy the plaintiff by a return of shares of stock to which he
would otherwise have been entitled in accordance with the re-
script, and that no finding had been made by the master either
as to the date as of which the market value of the stock should

be ascertained or of the market value of the stock, except on July 11, 1904, the date at which the defendant contended that the value should be ascertained. The plaintiff contended and asked that the damages should be assessed either as of the date of the decree or as of the date of the filing of the bill of complaint, with interest therefrom. A decree was entered that the plaintiff recover of the defendant Heilborn as damages the difference between the market value of the stock purchased by Heilborn from the plaintiff at the date of such purchase and the price paid therefor by Heilborn to the plaintiff, together with interest upon the amount of this difference at the rate of six per cent from the date of the purchase, July 11, 1904. The plaintiff appealed.

*H. T. Richardson & H. M. Williams,* for the plaintiff.

*E. F. McClennen,* for the defendants.

MORTON, J. The sole question in this case is whether the damages should have been assessed as of the date of the sale and transfer of the stock by the plaintiff to the defendant Heilborn, or, if as of some other date, whether that should be the date of the filing of the bill, or of the entry of the final decree. The single justice ruled that they should be assessed as of the date of the transfer to Heilborn, and a final decree was entered accordingly. The plaintiff appealed.

The plaintiff concedes that if the action were trover for conversion of the stock, or an action for breach of contract to buy or sell the stock, the damages would have to be assessed as of the date of the conversion or of the breach. He also concedes that a similar rule would apply if the action were for deceit in procuring the plaintiff to sell and transfer the stock by means of false and fraudulent representations. But he contends that a different rule should apply when the suit is in equity for a rescission of the sale for fraud on the part of the vendee, and it is held that the plaintiff is entitled to rescind and to have the stock returned to him, but the defendant is unable to return the stock and damages are awarded in lieu thereof. In such a case he contends that he is entitled to have the damages assessed as of the date when he became entitled to a return of the stock; that is, either as of the date of the filing of the bill or of the entry of the final decree, as the

case may be. He insists that in no other way can he be put by means of money damages in as good a position as he would have been in if the stock had been returned to him. And that undoubtedly is true, and if failure to obtain the peculiar relief which he came into equity for has the effect of enhancing the damages which he otherwise would have been entitled to recover, or, what amounts to the same thing, if a different rule in regard to damages prevails in equity from that which prevails at law, then his position is sound; otherwise not. We have been referred to no case in which such a rule has b&en laid down, and we see no ground on which it can be supported consistently with well established rules of law. The suit, though brought in equity, is in substance and effect an action of deceit. *Arkwright v. Newbold*, 17 Ch. D. 301, 320. *Smith v. Chadwick*, 20 Ch. D. 27, 68; *S. C.* 9 App. Cas. 187, 193. In equity no less than at law the plaintiff in order to recover must show that he was induced to sell and transfer his stock by means of false and fraudulent representations on the part of the defendant. At law the plaintiff is limited to the recovery of damages for the fraud thus practised upon him. In equity he can have the sale set aside and his stock returned to him so far as it is within the power of the defendant to return it. That is where the remedy in equity excels that afforded by a court of law. If the defendant is unable to return the stock, then, as incidental to the relief sought by a rescission of the sale and a return of the stock, but not otherwise, the court having jurisdiction of the cause will proceed to assess the damages sustained by the plaintiff in consequence of the wrongful act of the defendant, instead of compelling him to bring an action at law. But the rule of damages is and must be the same in one court as in the other, like the rules of evidence. No good reason can be assigned for assessing the damages as of the date of the final decree or of the filing of the bill in one case, and as of the date of the fraudulent transaction in the other. Such a rule would render or tend to render the damages remote and speculative, and is open to the same objections in equity as at law. The general rule is, no doubt, as the plaintiff contends, that the injured party is entitled to be put in as good a position as he would have been but for the wrong done him. But with

this rule there goes another, that the consequences for which the wrongdoer is liable are only those which are the direct and proximate results of his wrongdoing. Courts cannot undertake to follow to its utmost consequences the wrong that is done. It would be impracticable to attempt to do so. In this case the wrong was done when the deceit was practised, and the consequences must be measured as of that date or within a reasonable time thereafter. If, as already observed, in a case like the present the wrongdoer has the stock in his possession or control, equity will compel him to return it upon the plaintiff's putting him *in statu quo ;* — not because the plaintiff is entitled to have his damages assessed as of the date when a return would have been ordered, but because as against the plaintiff the defendant has no just title to the stock and in equity and good conscience ought to return it to the plaintiff. If, however, the defendant has not the stock in his possession or control, it would be entering the realms of conjecture and speculation to assume that the plaintiff would have kept the stock if he had not been induced to part with it by the defendant's fraud, and that the damages should be assessed accordingly.

The plaintiff relies strongly on *Fowle* v. *Ward*, 113 Mass. 548, to which might be added *Sewall* v. *Boston Water Power Co.* 4 Allen, 277, *Pratt* v. *Taunton Copper Co.* 123 Mass. 110, and *McKim* v. *Hibbard*, 142 Mass. 422. He also relies on *Hayward* v. *Leeson*, 176 Mass. 310, 322, 323, and on *Washington Ice Co.* v. *Webster*, 125 U. S. 426, 439.

*Hayward* v. *Leeson, supra,* was a case brought to recover secret profits alleged to have been made by a promoter, and has no bearing upon the question before us except so far as it affords an illustration of the rule that the injured party is entitled to be put in as good a position, so far as practicable, as he would have been in but for the wrong done him. Even in that case it is said that " ordinarily the damages are to be assessed as of the date of the taking." (p. 322.) The case of *Washington Ice Co.* v. *Webster, supra,* was an action of replevin, and the question was whether the defendant in replevin who had judgment in his favor was entitled in an action on the replevin bond to recover damages as of the date of the taking or as of the entry of judgment in his favor in the replevin

suit. It was held that the damages were to be assessed as of the date of the taking. Obviously that case does not help the plaintiff. In *Fowle* v. *Ward*, 113 Mass. 548, the defendant wrongfully disposed of shares belonging to the plaintiff which, as the court said in the opinion, "ought to be in the defendant's hands at this moment," and a decree was entered for a sum as damages which would enable the plaintiff to replace the shares which had been taken from him. In the case before us the defendant was not bound to have the stock in his hands when the bill was brought, or at any other time. Until the plaintiff elected to avoid the sale the defendant could rightfully sell and dispose of the stock to an innocent purchaser, and, as it is in effect found, had done so long before the bill was brought. The case before us is therefore widely different from *Fowle* v. *Ward*, *supra*, and from such cases as *Sewall* v. *Boston Water Power Co.*, and *Pratt* v. *Taunton Copper Co.*, *supra*. It also differs from cases relating to specific performance, even if we assume that, in case of a partial or total inability to perform, the damages would be assessed as of the date of the bringing of the bill or of the entry of the final decree, of which there may be some doubt. See *Woodbury* v. *Luddy*, 14 Allen, 1; *Davis* v. *Parker*, 14 Allen, 94, 104; *Lexington Print Works* v. *Canton*, 171 Mass. 414; *Wonson* v. *Fenno*, 129 Mass. 405; *Milkman* v. *Ordway*, 106 Mass. 232; *Pingree* v. *Coffin*, 12 Gray, 288; *Neppach* v. *Oregon & California Railroad*, 46 Ore. 374; *S. C.* 7 Am. & Eng. Ann. Cas. 1035.

To avoid misconception we add that if the defendant had disabled himself from conveying the stock by a sale and transfer after the bill was brought, a different rule from that which we have laid down for this case might apply. But that question is not before us, and we have not therefore considered it.

The result is that the decree must be affirmed.

*So ordered.*