HENRY C. HALL, administrator, *vs.* WILLIAM A. PAINE & others.

Suffolk.   November 8, 1915. — April 11, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Stockbroker*, Liability to customer.  *Damages*, In contract.  *Stock Exchange*, Rules of.  *Agency*, Scope of authority.  *Election.*  *Contract*, Rescission, Ratification.

In an action of contract against a stockbroker by one of his customers there was evidence that the defendant had purchased for the plaintiff a large number of shares of a certain stock which was dealt in actively on the stock exchange and was bought and sold daily, that the defendant agreed to carry these shares for the plaintiff on margin and to deliver them to him on demand regardless of the state of the market, that against the plaintiff's objection and protest the defendant from time to time sold these shares until all of them were sold, sending to the plaintiff immediately after each sale notice of the sale and an account of it, that after the final sale the defendant sent to the plaintiff a check for the balance shown by the account to be due, which the plaintiff kept, and that the plaintiff thereafter demanded the return of all the shares of stock and brought his action for damages.  *Held*, that the plaintiff could recover only nominal damages, as he might have purchased the shares at substantially the prices at

which they were sold by buying them back on receiving notice of each sale; and that the rule as to computing damages by the highest intermediate value of the shares is not applied to such a case in this Commonwealth.

Where a stockbroker holds shares of stock belonging to a customer with a general authority, either express or implied, to sell them, he has no authority to sell them to himself without the knowledge and assent of his customer, and, if he does so, the sale is voidable by the customer, although it may have been at auction and the full market price has been paid so that no harm has resulted.

Although one who employs a stockbroker to buy or sell shares of stock for him on a stock exchange is bound by the established usages of that stock exchange so far as they are not illegal or contrary to sound public policy, whether he knows of them or not, he is not bound by a usage of the stock exchange which permits a broker to buy for himself without the knowledge of his customer shares of stock which such customer has entrusted to him for sale.

One who employs a broker to sell for him shares of stock on a stock exchange is bound by a usage of the stock exchange, which also is embodied in an express rule, permitting brokers to purchase shares of stock from their customers when acting, not for themselves personally, but as brokers for other customers; and, where such sales were made at market prices and there is nothing to indicate that the selling customer was not dealt with fairly, he cannot avoid the sale by showing that he did not know of the usage or rule.

One, who has the right to avoid a sale of shares of stock made for him by a broker to the broker himself personally under a usage of the stock exchange unknown to the customer, must exercise his right of avoidance within a reasonable time after he learns of the facts or after he might learn of the facts by inquiry under circumstances that would put a man of ordinary intelligence upon inquiry.

In the present case, where the plaintiff had received and retained the defendant's check for the balance of his account as stated by the defendant, it was *held,* that it could not be ruled as matter of law that the plaintiff had affirmed the sales which he sought to avoid.

In an action against a stockbroker by a customer, where the plaintiff has established the fact that he exercised his right of avoidance of such sales of shares of stock within a reasonable time, the plaintiff, if he shows that the defendant made certain sales of the plaintiff's stocks to himself personally, can recover the difference between the value of the stocks when sold and their value when the sales were made known to and were repudiated by him, with interest from that date.

RUGG, C. J. The plaintiff's intestate was a customer of the defendants, a firm of stockbrokers, who were carrying for him certain stocks on margin. He seeks to recover from them damages alleged to have been sustained arising out of these transactions. For convenience, the plaintiff's intestate hereafter will be referred to as the plaintiff.

1. One ground of action is the breach of an oral contract, whereby the defendants agreed to carry for him shares of Copper Range Consolidated Mining Company stock as long as he desired, regardless of the state of his margin account and of the market,

and to deliver them to him on demand. Whether the contract was made, as alleged by the plaintiff, was one of the issues at the trial. There was evidence tending to show that the plaintiff at one time had fourteen hundred and fifteen shares of the Copper Range Consolidated Mining Company stock in the hands of the defendants which they were carrying for him on margin; and that from time to time the defendants sold all these shares, sending him forthwith after each sale notice and an account; and that after the final sale a check was sent him for the balance shown to be due, which the plaintiff kept. The plaintiff seasonably protested against the making of these sales and finally demanded the return of the stock, which the defendants refused. Copper Range Consolidated appears from the evidence to have been a stock in which there was active trading on the stock exchange and which, therefore, could readily have been bought in the market day by day.

At the close of the evidence the judge instructed the jury that if they should find the contract to have been made between the plaintiff and defendants as contended by the former, his damages for breach of the contract by sales of the stock would be nominal. In view of that ruling, the plaintiff did not care to go to the jury upon the question whether the contract was made.*

The case calls for a statement of the rule of damages to be applied when there is a breach of contract to carry stocks. It is contended by the plaintiff that the governing rule of damages is that known as the highest intermediate value rule, whereby he is entitled to recover on the basis of the highest prices which could have been realized for the stock between the times when the several blocks of stock were sold and the time of trial.

The common rule of damages for the breach of a contract is the actual loss at the time of the breach. *Barrie* v. *Quinby,* 206 Mass.

---

* The case was tried before *Brown,* J. His other rulings are described in the opinion. The judge ruled that the plaintiff if entitled to damages, might "recover on the basis of the highest prices which could have been realized for such stocks between the time when the transactions referred to took place and the time when the plaintiff had notice or knowledge of the way in which these shares had been dealt with." The parties computed the damages under this rule and agreed upon the amount of $116,068.20. By direction of the judge the jury returned a verdict for the plaintiff in this sum, and the judge thereupon reported the case for determination by this court.

259, 267, 268, and cases there collected. *Cumberland Glass Manuf. Co.* v. *Wheaton,* 208 Mass. 425, 434. *Moffat* v. *Davitt,* 200 Mass. 452. *Tufts* v. *Bennett,* 163 Mass. 398. *Williams Brothers* v. *Ed. T. Agius, Ltd.* [1914] A. C. 510, 520, 523, 530. The foundation for this rule as applied to contracts for sales or purchases is that goods such as are ordinary subjects of commercial transactions have a fixed value in the market, so that they can be replaced or disposed of at any time. Adequate compensation for the breach of any duty touching the purchase, sale, delivery or carrying of such property is measured by its fair market value at the time of the breach. This is a principle which in its broader aspects has illustrations in many departments of the law. It is the usual rule for the determination of damages arising from the conversion of property. The owner is entitled to recover the fair market value of the property at the time of conversion. Fair market value is the established standard by which to gauge the damages for the taking of property under the power of eminent domain. The measure of damage for deceit or breach of warranty in the sale of goods is the difference between the market value of the thing sold and of that bargained for. The fundamental principle upon which all these rules rest is that, by resort to the test of market value, fair and complete compensation is afforded for the deprivation of the property to which otherwise the injured party would be entitled. Indemnity for such damage is afforded by payment of market value. The theory of the law is that the injured party shall be placed in the same position he would have been in if the duty owed to him had not been violated, so far as compensation can be ascertained by rational methods resting upon a basis of facts. But he is not to be made richer.

It is a general principle of law, because it is a rule of fair dealing, that when one is deprived of the fruits of a contract, he must use the efforts of a reasonably prudent man to put himself in as good a position as he would have been in if the contract had not been abrogated. He cannot lie idly by and expect to recover all losses which such inaction may entail as damages for breach of the contract. He must be reasonably active and diligent to recoup his loss. *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1, 6. *Jamal* v. *Moolla Dawood Sons & Co.* [1916] A. C. 175, 179. The same rule obtains in actions of tort. *Gray* v. *Boston Elevated Rail-*

*way,* 215 Mass. 143, 147. *Texas & Pacific Railway* v. *Hill,* 237 U. S. 208, 215. The plaintiff could have purchased shares of stock to replace those sold by the defendants within a reasonable time after such sales at substantially the same prices as those for which the sales were made. That principle applied to the case at bar would enable the plaintiff to recover only nominal damages.

The common rule as to the assessment of damages has been applied frequently in this Commonwealth in actions for breach of contract for sale, and for delivery, and for conversion of stock. The early case of *Gray* v. *Portland Bank,* 3 Mass. 364, was an action for the refusal to let the plaintiff subscribe for and take shares of stock in a corporation according to the terms of his contract. In discussing the rule of damages, reference there was made (pages 390, 391) to the English rule of highest intermediate value, but it was held that the same rule applied to stocks as to other kinds of personal property, and that the time when the stock should have been delivered was the time as of which its value should be ascertained for purposes of determining the damages, and not the time of trial or any intervening time. In *Sargent* v. *Franklin Ins. Co.* 8 Pick. 90, 100, the same principle was followed. The rule of intermediate highest value up to the time of trial, recognized as prevailing in New York at that time, was repudiated. The court there followed, in determining the rule of damages to be applied in stock transactions, the rule applicable to the conversion of goods, namely, their value at the time of conversion. To the same effect are *Hussey* v. *Manufacturers & Mechanics' Bank,* 10 Pick. 415, 422; *Wyman* v. *American Powder Co.* 8 Cush. 168, 182; *Fay* v. *Gray,* 124 Mass. 500; and *Greenfield Savings Bank* v. *Simons,* 133 Mass. 415. All these are cases relating to damages for detention of stock, where the rule is followed without discussion. See, also, *Greenfield Bank* v. *Leavitt,* 17 Pick. 1, and *Stewart* v. *Joyce,* 205 Mass. 371. A case very like that at bar was *Parsons* v. *Martin,* 11 Gray, 111, where a broker, having been entrusted with stock for a definite purpose, used it for another purpose, and where at page 116 it was said: "And having thus violated his duty, by making a disposition of the stock which was unauthorized and unjustifiable, he became immediately responsible for the value of the property with which he had been entrusted. It was in effect a conversion of it to his own use; and

the well established rule in reference to compensation to be made or damages recovered in such cases is the market value of the property at the time of its conversion." This rule was discussed by Chief Justice Shaw with his customary thoroughness and conclusiveness of result in *Parks v. Boston,* 15 Pick. 198, 206, 207. He there treats actions as to stocks as standing on no other or different basis than any other commodity in respect of damages for breaches of contract as to delivery or sale or for conversion. He adverts to the specious plausibility of a rule which stops the mouth of a wrongdoer to deny that "the plaintiff, if he had had his stock, might not have kept it for the highest price to which it has at any time risen," especially since the defendant by keeping the stock or money, perhaps practically has deprived the plaintiff of the opportunity of buying "an equal quantity at the market price of the day." The fallacy of this argument there is demonstrated by reference to the rule that damages for the detention of money universally are held to be measured by interest. His conclusion in favor of the rule of market value and against that of highest intermediate value, is stated in these words at pages 207, 208: "But the other rule has found favor, not because it will, in all cases, do justice; for no general rule will do this; but because it is more equal, it is certain and simple and practical, and will do justice in the greatest number of cases. The rule contended for is not equal, because, if the goods or stock have fallen, between the time of the non-delivery and the time of the trial, the defendant is not to have the benefit of it. This, no doubt, results from the consideration, that the defendant is a wrongdoer, and it is just to throw the risk upon him. But it is manifest, that this would throw a strong temptation in the way of a plaintiff to delay bringing his action, as long as the rule of limitations will admit, in order to avail himself of the probable fluctuations in the market. To guard against this, some judges have laid down the rule with this modification, namely, that the action is brought without delay, (*Clark v. Pinney,* 7 Cowen, 681, 696,) or confined plaintiffs to one of two periods, as the day of the breach, or the day of the trial. But the advantage of the other rule is, that it is certain and practical, and tends to prevent litigation, being a rule which parties may apply for themselves, and which, in most cases, will be the nearest approximation to doing particular justice. These are

advantages, which those conversant with legal proceedings, know how to appreciate." These words were used in deciding a petition for the assessment of damages for a taking by eminent domain, where the argument of highest intermediate value had been put forward, and where logically it was as applicable as in the case at bar. The plaintiff in each case is entitled to compensation or indemnity for loss sustained and to nothing more. Vindictive or punitive damages are not a part of our law. See *Ellis* v. *Brockton Publishing Co.* 198 Mass. 538, 543. There is nothing inconsistent with this result in *Maynard* v. *Pease,* 99 Mass. 555. There specific instructions to a factor not to sell merchandise below a fixed price were violated. The evidence was not reported, and the ruling as to damages was sustained by reference to the possibility that the sale may have been at a time when the market was depressed and a favorable price could not be obtained. Confessedly the opinion does not undertake to lay down the correct rule of damages. *Dalby* v. *Stearns,* 132 Mass. 230, is not at variance but rather in harmony with the general rule. *Fowle* v. *Ward,* 113 Mass. 548, is distinguishable for the reasons set out in *Stewart* v. *Joyce,* 205 Mass. 371, 375. This review of our cases demonstrates that for more than a century the rule of damages applied to breaches of contracts respecting stocks and in actions for conversion of stock has been the same as that applied to similar facts touching other classes of property.

There appears to us to be no sound reason apart from authority why any different rule of damages should be invoked as to stocks from that which governs transactions respecting other property.

In general when exceptional circumstances appear which demonstrate that the rule of fair market value would not afford compensation, then the usual principle becomes no longer applicable and inquiry is made as to the real damage sustained by the breach of duty or other injury. See *Stickney* v. *Allen,* 10 Gray, 352; *Green* v. *Boston & Lowell Railroad,* 128 Mass. 221; *Smith* v. *Commonwealth,* 210 Mass. 259, 261 and cases cited; *Weston* v. *Boston & Maine Railroad,* 190 Mass. 298; *Wallis, Son & Wells* v. *Pratt & Haynes,* [1911] A. C. 394. The same is true where the evidence established no market value. *Whitney* v. *Lynch,* 222 Mass. 112. There is nothing extraordinary or peculiar in the nature of corporate stocks which renders contracts touching them

subject to any different rules than those which govern the sales of other property. Indeed, there is scarcely any commodity whose value is more intimately dependent upon the state of the market. When they are bought and sold regularly on the stock exchange, a market value is constantly established, by resort to which their precise value at any time may be ascertained with accuracy. It may happen that the rule of value at the time the right of action accrues in sales of stock made in violation of duty during a period of panic or unusual depression, or of stock subject to great fluctuations of market value, would not afford compensation. Where special or exceptional circumstances are made to appear, resort may be necessary to a more fundamental rule in order to do justice. That rule is, that a party injured by the breach of a contract is entitled to be compensated for the loss sustained as the natural and probable consequences flowing from the failure of the other party to perform the contract by the other party, or which reasonably may be presumed to have been within the contemplation of the parties at the time the contract was made as a probable result of a breach of it. *Leavitt* v. *Fiberloid Co.* 196 Mass. 440, 446. *Boyden* v. *Hill,* 198 Mass. 477, 486. *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 21. It is on this principle that damages are awarded in appropriate cases for the loss of prospective profits of a business. *Neal* v. *Jefferson,* 212 Mass. 517. *Nelson Theatre Co.* v. *Nelson,* 216 Mass. 30, 35. If a broker has acted unfairly in selling stocks at a manifestly unfavorable time or for an unfavorable price, and the customer has not notice within such time and under such circumstances of access to the market that he could, if so disposed and acting with reasonable promptness having due regard to all factors of the situation, place himself in a situation similar to that in which he would have been but for the broker's breach of duty, then special circumstances might be shown which would entitle the customer to prove his special damage. Such special damage could not ordinarily exceed the price at which such stock could be bought within a reasonable time after the accrual of the right of action came to the knowledge of the injured party. Such special circumstances were shown, for example, in *Galigher* v. *Jones,* 129 U. S. 193, although the rule here stated was not in terms there followed. The rule of highest intermediate value is one which places all the

risk of damages, in case of a stock rapidly advancing in value, upon a defendant and gives him no chance of advantage from its decline. In instances of fluctuating stock that rule rests upon the almost unthinkable basis that a customer trading upon margins would maintain sufficient margins at all times and would sell at the exact moment of highest value. Such a fortuitous chance scarcely ever could be realized in actual experience. It seems to us to afford no just foundation for a rule of law, which ought to be based upon common custom and work out justice to parties in the great majority of cases to which it is likely to be applied.

For these reasons, both on the authority of our own cases and in reason, we decline to follow the rule of highest intermediate value which has been urged in argument.

That rule appears to prevail in England although it does not seem to have been expressly so decided. See *Michael* v. *Hart & Co.* [1901] 2 K. B. 867; *S. C.* [1902] 1 K. B. 482; *Ellis* v. *Pond*, [1898] 1 Q. B. 426. Although it once was adopted in New York, *Markham* v. *Jaudon*, 41 N. Y. 235, it soon was overruled in the able opinion in *Baker* v. *Drake*, 53 N. Y. 211; *S. C.* 66 N. Y. 518, where the present New York rule was established, that damages should be measured by the highest price reached within a reasonable time after the plaintiff has learned of the conversion of his stock within which time he could go into the market and repurchase it. This rule has been elaborated in other cases. *Mullen* v. *Quinlan & Co.* 195 N. Y. 109, 115. *Colt* v. *Owens*, 90 N. Y. 368. *Brewster* v. *Van Liew*, 119 Ill. 554. *In re Swift*, 50 C. C. A. 264. For the reasons already stated, the New York rule does not prevail in this Commonwealth. Perhaps in its practical operation as applied to some cases, the rule here stated, resting on the authority of our cases as a logical and symmetrical development of the general rule of damages, does not differ materially from the New York rule. Indeed, the statement of the New York rule in *Wright* v. *Bank of Metropolis*, 110 N. Y. 237, is not greatly unlike that here given.

The conclusion now reached is a rational application of general principles by which damages have been measured during many years in a vast variety of causes. Its application to the present facts tends toward a symmetrical system of law. It works justice in most cases. It is simple and certain. It finds support in

other jurisdictions. *Pinkerton* v. *Manchester & Lawrence Railroad,* 42 N. H. 424. *Frothingham* v. *Morse,* 45 N. H. 545. *Pennsylvania Co. for Ins. on Lives* v. *Philadelphia, Germantown & Norristown Railroad,* 153 Penn. St. 160. *McKenney* v. *Haines,* 63 Maine, 74. See 2 Sedg. Damages, (9th ed.) § 523. It is consonant with general principles and avoids the setting up of a special rule applicable only to a particular kind of property. As was said by Cooley, J., in *Chadwick* v. *Butler,* 28 Mich. 349, 353, it affords damages which "would have enabled the party to purchase other property of the like kind and of equal value at the same place."

No exceptional circumstances are disclosed in this case which require the application of any other than the ordinary rule. The sales were made at the prevailing market prices. They were not made on occasions of extraordinary and temporary depressions of value or in panic periods. They were not timed to work oppression to the plaintiff. Immediate notice was given to him in every instance, so that he was kept constantly advised of the situation. Ample opportunity was afforded him to repossess himself of a like amount of stock sold at the same price if he had so desired and had exercised ordinary diligence to that end. It is plain, therefore, that the ruling was right, to the effect that nominal damages alone could be recovered for breach of the general contract to carry these stocks. The plaintiff's reliance in this connection on *P. P. Emory Manuf. Co.* v. *Salomon,* 178 Mass. 582, cannot be supported. That case has no application to these facts. All his counts upon this branch of the case stand on the same footing and are governed by what has been said.

2. The second ground of action set forth by the plaintiff, relates to sales of stock made by the defendants as brokers, under a general express or implied authority from the plaintiff to sell. It is founded upon the allegation in substance that the defendants reported to him from time to time that they had sold for him certain stocks, whereas in truth these stocks were not actually sold, but were either fictitiously transferred to or bought by the defendants personally or as agents for their other customers, without special authorization to that end and in violation of their duty to him; that these stocks are still the property of the plaintiff, and that this was a breach of their obligation to him and a

deception for which he is entitled to damages. This alleged ground of action related not to authority to sell but to the exercise of the authority.

There was evidence tending to show that certain sales of stocks (a general express or implied authority to sell which had been given by the plaintiff to the defendants) reported to the plaintiff as made for him by the defendants were purchases directly by themselves as brokers for other customers, according to the rule and practice of the stock exchange; and that in other instances they had purchased or taken over certain of these stocks for themselves on their own account at the market price. This method of doing business was not reported to the plaintiff by the defendants and he did not know of it or of the rule or custom of the stock exchange respecting the subject until the hearing before the auditor; but the plaintiff knew that there were rules of the stock exchange and he contracted with reference to them. On this state of the evidence upon this branch of the case, the judge ruled that "the defendants, without the plaintiff's knowledge or assent, had no right to purchase the plaintiff's stock which they were employed as brokers to sell, and that they had no right while acting as the plaintiff's brokers to sell his stock . . . also to act as brokers for the purchasers of the stocks." Accordingly, he ruled that the plaintiff's "title to such stocks as were thus dealt with is not affected by the transactions whereby the defendants acquired his stocks either for themselves or their customers, and that they continued bound to deliver or account for them upon the payment or offer of the amount due the defendants." This branch of the case falls into two divisions.

A. The first part of this ruling means in its essence that, in the absence of assent by the plaintiff, the defendants had no right to buy the stocks directly themselves even though this was permitted by the custom of the stock exchange, and that any custom of the stock exchange permitting such direct purchases was invalid. Although the rule in this Commonwealth is that, in the ordinary relation between customer and broker where the latter carries stocks on margin, the legal title is in the broker, *Chase* v. *Boston,* 180 Mass. 458, differing in this respect from that of some other jurisdictions, *Gorman* v. *Littlefield,* 229 U. S. 19, yet the broker owes the same duty to the customer in the purchase and

sale of stocks, "that he owes to him, where he is employed to buy stocks, which are to be taken and paid for by the customer in place of being taken and paid for by the broker for the customer." *Rice* v. *Winslow*, 180 Mass. 500, 502. For breach of that duty by the broker a cause of action arises and, so far as the measure of damages goes, it is not of consequence whether the action is in tort for conversion or for breach of contract. *Richardson* v. *Shaw*, 209 U. S. 365, 382. Moreover, in this respect it matters not whether the stocks were bought on margin or deposited with the broker. *Furber* v. *Dane*, 203 Mass. 108, 115.

It is a general principle that an agent clothed with naked power to sell, while he may transfer a good title to a third person, cannot purchase for himself, at least not without the full knowledge and assent of his principal. A broker's obligation to his principal requires him to secure the highest price obtainable, while his self-interest prompts him to buy at the lowest practicable price. The law does not trust human nature to be exposed to the temptations likely to arise out of such antagonistic duty and influence. This rule applies even though the sale may be at auction and in fact free from any actual attempts to overreach or secure personal advantage, and where the full market price has been paid and no harm has resulted. The converse of the rule is equally binding, that an agent to buy cannot sell his own goods to his principal without the latter's knowledge and assent. *Middlesex Bank* v. *Minot*, 4 Met. 325. *Lord* v. *Hartford*, 175 Mass. 320. *Quinn* v. *Burton*, 195 Mass. 277, 279. *Maxwell* v. *Massachusetts Title Ins. Co.* 206 Mass. 197, 202. *Hayes* v. *Hall*, 188 Mass. 510, 514. *Rothschild* v. *Brookman*, 5 Bligh, 165. *C. S. Wilson & Co.* v. *Finlay*, [1913] 1 Ch. 565, 568, 570.

This rule is so deeply grounded in fundamental reason that no custom or private rule can override it. Doubtless, when one employs another to trade for him in a particular market, he impliedly authorizes the dealings to be conducted according to the established usages of that particular market, whether he knows of them or not. *Cronin* v. *Hornblower*, 211 Mass. 538. *Furber* v. *Dane*, 203 Mass. 108, 116, and cases cited. *Bibb* v. *Allen*, 149 U. S. 481, 489. Yet, he becomes bound only by such usages as are not illegal or contrary to sound public policy and " are such as regulate the mode of performing the contracts, and do not change their

intrinsic character." The present custom permitting one employed as a broker to become the purchaser without notice "is of such a peculiar character, and is so completely at variance with the relation between the parties, converting a broker employed to buy" or to sell "into a principal selling" or buying "for himself, and thereby giving him an interest wholly opposed to his duty, that . . . no person who is ignorant of such an usage can be held to have agreed to submit to its conditions, merely by employing the services of a broker, to whom the usage is known, to perform the ordinary and accustomed duties belonging to such employment." *Robinson* v. *Mollett*, L. R. 7 H. L. 802, 836, 838. *Irwin* v. *Williar*, 110 U. S. 499. *Tetley* v. *Shand*, 25 L. T. (N. S.) 658, 661. *Hamilton* v. *Young*, 7 L. R. (Ir.) 289. So far as the defendants bought stocks for themselves which as brokers they were selling for the plaintiff, these sales were at least voidable and may be treated as such by the plaintiff.

B. But so far as the transactions involve sales by the defendants, as brokers for the plaintiff, to themselves acting as brokers for other customers and not for themselves personally, different considerations prevail. There was evidence tending to show, not only the custom of the stock exchange permitting such sales and purchases, but an express rule of the stock exchange authorizing them and governing their conduct.* The auditor found that there was no direct evidence that the plaintiff knew of the article in the rules of the stock exchange, "but he did know that there were rules of the exchange and he contracted with reference to them." The point to be decided is not strictly whether an agent can act at the same time for both parties to the same transaction. That cannot be done ordinarily without general assent. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 375, 376. *Dzuris* v. *Pierce*, 216 Mass. 132, 135, 136. *Quinn* v. *Burton*, 195 Mass. 277. *Little* v. *Phipps*, 208 Mass. 331, 333. *Ebert* v. *Haskell*, 217 Mass. 209. Nothing hereafter said impairs that rule in the slightest degree. The precise point is, whether a rule of the stock exchange together

---

* The rule referred to was as follows: "Where parties have orders to buy and orders to sell the same security, said parties must offer said security, whether it be stocks or bonds, at ⅛ % higher than their bid before making transactions with themselves, but such transactions cannot be quoted when objected to."

with a custom of the trade permitting a stockbroker to sell on the exchange for one customer and to buy the same stock on the exchange for another customer, shall be stricken down as invalid in the absence of actual knowledge by the customers, although they know that there are rules and contract with their brokers with reference to such rules.

The employment of a stockbroker in the business of buying and selling on the stock exchange at the market price or for definite prices securities which find there a ready and immediate sale is of a peculiar nature. No discretionary authority is vested in the broker. Commonly, there is no opportunity for the exercise of judgment. The broker becomes a mere intermediary. There is no reasonable possibility for the broker, employed for selling an active stock at the market or at a stipulated price, to assume an antagonistic duty by buying the same stock on the same market for other customers. *Macoun v. Erskine Oxenford & Co.* [1901] 2 K. B. 493, 500. The duty is equal to both the buying and the selling customer and the element of temptation for personal gain or preference is reduced to a minimum, if not entirely eliminated. The practical effect of the rule ordinarily is to require the stockbroker to try to sell the stock to third persons at a better price than that set in his customer's order to buy, and to take it for that customer at that customer's price only after an unsuccessful effort to get a higher price for his selling customer or the customer whose stocks he is carrying. If this rule could not be upheld, possibly all three parties to the transaction might suffer. The buying customer later on might have to pay a higher price, the customer whose stocks are being carried might not get so high a price, and the broker carrying the stock for his customer might have to take a lower price and hence not be made good.

If there were special conditions showing a private gain to the brokers beyond the usual commission, or unfairness to either customer, a different case would be presented. *Erskine Oxenford & Co. v. Sachs,* [1901] 2 K. B. 504, 511, 513. Nothing of that sort is disclosed on this record. It is almost a matter of common knowledge that stockbrokers in large business often buy for some customers and sell for other customers on the same day considerable amounts of the same kind of stock. The prevalent method

of settling the balances of different brokers on the stock exchanges through the medium of clearing houses is founded on this kind of buying and selling. *Fiske* v. *Doucette,* 206 Mass. 275, 282.

Therefore, we are brought to the conclusion that, as to stocks of the plaintiff sold by the defendants as brokers for him and bought by them as brokers for others of their customers, such sales and purchases being in accordance with the rule and custom of the stock exchange, at market prices, without any circumstances indicating that in fact the plaintiff was not fairly dealt with, these sales were valid and binding. In this respect the ruling of the Superior Court was erroneous. To prevent misunderstanding, it may be added that this principle is confined to the facts here stated.

3. The defendants asked for rulings to the effect in substance that upon all the evidence the plaintiff must be held to have affirmed the sales (if any there were) made to the defendants directly on their own account and not as brokers for their other customers. These requests rightly were refused. The plaintiff could not act in the premises until facts came to his attention which would reveal to him the true situation. If he elected to rescind and avoid the sales, he was bound to act within a reasonable time after he knew the facts. *Bassett* v. *Brown,* 105 Mass. 551, 557. *Learned* v. *Foster,* 117 Mass. 365, 370. *Rogers* v. *Barnes,* 169 Mass. 179, 184. A person situated like the plaintiff was bound to act with reference not only to his actual knowledge, but he is also chargeable with such information as he might have obtained on inquiry, provided he knew of circumstances which would have put a man of ordinary intelligence upon an inquiry which would have revealed the truth. And knowledge which one has or ought to have is to be imputed to one in a position like that of the plaintiff. *Farnam* v. *Brooks,* 9 Pick. 212. *Johnston* v. *Standard Mining Co.* 148 U. S. 360, 370, 371. *Higgins* v. *Crouse,* 147 N. Y. 411, 416. The crucial facts appear not to have been established with sufficient clearness to require the giving of any of the rulings requested upon this point. The reception and retention of the check under all the circumstances was not decisive as matter of law, *McKay* v. *Myers,* 168 Mass. 312, *Worcester Color Co.* v. *Henry Wood's Sons Co.* 209 Mass. 105, however persuasive might be its force in determining the fact.

4. The rule of damages as to those sales which the plaintiff may set aside, laid down by the Superior Court, was that the plaintiff might "recover on the basis of the highest prices which could have been realized for such stocks between the time when the transaction referred to took place and the time when the plaintiff had notice or knowledge of the way in which these shares had been dealt with." This was an adoption of the rule of highest intermediate value. As has been pointed out, that is not the law of this Commonwealth and hence that ruling was erroneous. The plaintiff was at liberty to set aside such sales within a reasonable time after he knew of them and demand the return of the stocks. The trial seems to have proceeded without objection, under amendments to the declaration, upon the theory that he had elected to set aside these sales and demand the return of the stocks. The correct rule of damages to be applied, if the plaintiff should prove that the defendants made sales of stock to themselves, either real or fictitious, is that the plaintiff may recover the difference between the value of the stocks when sold and their value when the sales were made known to and repudiated by him, together with interest from that date.

The result is that the plaintiff is not entitled to recover anything more than nominal damages for the breach of the alleged special contract to carry shares of Copper Range Consolidated Mining Company stock, and hence there is to be no new trial on that issue. There is no right of recovery as to sales of stock made by the defendants as brokers for the plaintiff to themselves as brokers for other customers and made in accordance with the rules of the stock exchange and at market prices. The plaintiff's only ground for recovery is confined to the remainder of his declaration.

, <i>So ordered.</i>

*R. M. Morse,* (*W. P. Everts* with him,) for the defendants.

*S. L. Whipple & A. Lincoln,* (*E. H. Abbot Jr.* with them,) for the plaintiff.