## OSAGE OIL & REFINING CO. v. CHANDLER et al.

(Circuit Court of Appeals, Second Circuit. January 30, 1923.)

No. 141.

1. **Injunction ⊜⟶252(4)—Depreciation of value of personal property from a delay in sale by injunction is "damage occasioned by the injunction."**

The general principles for measuring damages ordinarily apply in actions for wrongfully suing out injunction, and the damages allowed are those which are the actual, natural, and proximate result of the wrong committed, so that depreciation resulting from a delay in the sale of personal property by reason of the restraining order is occasioned by the injunction.

2. **Injunction ⊜⟶252(4)—Right to sell or dispose of property prevented by injunction entitles owner to damages.**

The jus disponendi or right of disposal is an incident of the ownership of property, for which the owner may recover damages, when his right to sell or dispose is wrongfully prevented by the procuring of an injunction.

3. **Damages ⊜⟶18—Complainant must show loss as the proximate cause of defendant's wrong.**

The rule for assessing damages is the same in courts of law and in courts of equity, and the party complaining must show, not only that he has suffered loss, but that such loss would not have been incurred, had it not been for the wrongful acts of the defendant.

4. **Injunction ⊜⟶119—Allegation on information and belief in bill for injunction that defendant intended to sell property not put in issue by general denial of allegations of bill.**

A bill for injunction, alleging on information and belief that the defendant intended to and was about to sell corporate stock, the sale of which was sought to be enjoined, was not put in issue by a mere denial of the allegations of the bill.

5. **Injunction ⊜⟶251—Finding that owner of corporate stock entitled to damages for depreciation in value by wrongful injunction warranted.**

Where a corporation wrongfully obtained an injunction prohibiting an owner of its corporate stock from selling same, his recovery on the injunction bond of damages by depreciation in value of such stock cannot be resisted as not the proximate result of the wrong, because the owner made no attempt to sell until injunction was dissolved, where the evidence shows that, as soon as the injunction was dissolved, the owner sought to transfer the stock, but the corporation refused to permit a transfer on the corporate books, a finding that the owner intended to sell the stock and was prevented by complainant's wrong was warranted.

Appeal from the District Court of the United States for the Southern District of New York.

Injunction suit by the Osage Oil & Refining Company against W. R. Chandler, impleaded with Alice E. Haller. From a decree confirming the report of a special master, finding the damages suffered by defend-

---

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ant Chandler and rendering judgment therefor against the plaintiff and its surety, it appeals. Affirmed.

See, also, 280 Fed. 693.

The plaintiff is a corporation organized under the laws of the state of South Dakota, and it has its principal place of business in Pierre in said state. The defendant Chandler was the plaintiff's agent in the sale of its capital stock and performed his duties in the state of New York.

The bill of complaint alleged that about June 1, 1920, defendant Chandler represented to plaintiff that he had received an offer from defendant Haller to purchase 6,666 shares of the capital stock of plaintiff corporation at $1.50 per share, aggregating $10,000 to be paid for by the delivery to plaintiff of certificates for 27,000 shares of the capital stock of American Oil & Refining Company of Delaware (hereinafter called the Delaware Company), of the par value of $1, to be accepted at a price of 40 cents per share, aggregating $10,800; the difference of $800 to be paid in cash by the plaintiff to the defendant Haller. It alleged that, in order to induce the plaintiff to sell its stock to Haller, it was represented by Chandler that the stock of the Delaware Company was selling in the open market at a price of from 40 cents to 60 cents per share, and that he had received a bona fide and standing offer, from the stock brokerage house of Jones & Baker of New York City, to purchase the said stock of the Delaware Company at a price of 40 cents per share.

It alleged that, unknown to plaintiff, there were two corporations organized and doing business under the name of American Oil & Refining Company, one incorporated under the laws of the state of Delaware, and the other under the laws of the state of Oklahoma, and that it was the stock of the Oklahoma corporation which was selling at the price represented to plaintiff by Chandler, which fact was known to the defendants Haller and Chandler at the time the proposition was submitted to plaintiff, and that said facts were fraudulently concealed from plaintiff by the defendants. It alleged that it was also known to Haller and Chandler that the stock of the Delaware corporation was of little or no value, and that this fact was fraudulently concealed from plaintiff by collusion of defendants.

It is alleged that each of the aforesaid representations were false, and known by the defendants to be false and fraudulent, at the time the same were made. and that they were made with the intent to deceive, mislead, and defraud the plaintiff; and it further alleged that at the time of the making of said representations to and concealment of said facts from plaintiff, and at the time of the purchase by defendant Haller of said shares of stock in the plaintiff, that said stock had and still has a market value of $1.50 per share. It alleged that plaintiff, believing the said false and fraudulent representations of the defendants, and relying thereon, and having no knowledge or information of the facts fraudulently concealed from it as aforesaid, and being ignorant of the true condition of the Delaware Company and the value of its stock, was induced to purchase on June 3, 1920, in the city of New York, from defendant Haller, the said 27,000 shares of stock of the Delaware Company, and that it delivered to said defendant, in exchange therefor, 6,666 shares of the capital stock of the plaintiff corporation, of the market value of $1.50 per share, together with $800 in cash; and plaintiff was thereby damaged in the sum of $10,800, with interest thereon from June 3, 1920.

The bill asked a rescission of the contract of sale of the stock and for an injunction restraining the defendants from assigning, transferring, indorsing, pledging, hypothecating, or otherwise negotiating, disposing of or parting with the possession of said shares of stock in plaintiff corporation, during the pendency of the suit, and that a temporary restraining order to that effect be granted pending the hearing on the motion for a preliminary injunction. It asked that defendants be directed to surrender and deliver to plaintiff, properly indorsed for cancellation, the certificates for said 6,666 shares of its capital stock, delivered to them as aforesaid.

An order for a preliminary injunction was granted by consent of the attorneys for defendant Chandler, upon plaintiff giving a bond of $3,000. The

287 F.—54

plaintiff duly filed a bond in that sum with the American Surety Company of New York as surety. When the cause came on for trial a decree was entered dismissing the plaintiff's bill, and on appeal to this court that decree was affirmed. 280 Fed. 693. The decree ordered that defendant Chandler recover damages suffered by the injunction, and that the cause be referred to a special master to ascertain and report the damages, if any, defendant Chandler had suffered by reason of the injunction which was dissolved by the decree. In due time the special master filed his report finding that Chandler had suffered damages to the amount of $1,999.80, being for a loss of 60 cents per share on each share of the 3,333 shares of plaintiff's stock held by him on account of the depreciation thereof in value. Exceptions were duly filed to the report and were overruled by the District Judge, who entered a decree confirming the report, and adjudging that Chandler recover the sum above stated from the plaintiff and the American Surety Company, the surety on the bond. Judgment was entered accordingly.

The plaintiff has appealed from the decree confirming the report of the special master and from so much of the judgment as includes the sum of $1,999.80 found as the damages.

Samuel H. Wendell, for appellant.

Hedges, Ely and Frankel, of New York City (David Cohen, of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The only question raised by this appeal relates to the finding of damage in the sum of $1,999.80 representing the decline in the market value of the plaintiff's stock, from the date of the injunction to the date of the original decree dissolving the injunction. The purpose of the injunction bond was to protect the defendant Chandler from the order enjoining him from disposing of the stock. That order dated July 8, 1920, enjoined him "from assigning, transferring, indorsing, pledging, hypothecating, or otherwise negotiating, disposing of, or parting with the possession of and title to" the 3,333 shares, and the certificates therefor of the capital stock of the plaintiff corporation standing in his name on the books of the plaintiff corporation.

The stock involved had a definite ascertainable market value and was the subject of daily trades in the open market. It is obvious, therefore, that the effect of the injunction was to deprive the owner of the shares of the opportunity to take advantage of the market situation and realize a profit or spare a loss from the sale of the stock. The fact that the court in granting the injunction fixed the amount of the bond in a sum about equivalent to the then market value of the stock indicates that the purpose of the court was the protection of the owner of the shares against a possible loss which might arise from a decline in the selling value of the stock; it being a matter of common knowledge that oil stocks are unstable and have a highly speculative value. And it is evident that, where the owner of stock is deprived by a court order of a ready and available market for his security, he is damaged by the difference between the value of the stock at the time when he was enjoined and the value at the time when the injunction was dissolved.

The special master found that on the day when the injunction order was served the stock had a market of 90 cents a share, and on July 5, 1921, when the injunction was dissolved, it had a market value of 30

cents, and that it was declining, and reached 15 cents on July 14, 1921. He therefore found a loss of 60 cents a share on each of the 3,333 shares, and that Chandler suffered damage in the amount of $1,999.80.

[1] The general principles for measuring damages ordinarily apply in actions for wrongfully suing out injunctions; and the damages allowed are those which are the actual, natural, and proximate result of the wrong committed. The depreciation resulting from a delay in the sale of personal property is "occasioned by the injunction." 1 Spelling on Injunctions (2d Ed.) § 944. In Slack v. Stephens, 19 Colo. App. 538, 76 Pac. 741, an injunction was obtained restraining the sale of shares of stock. During the time the injunction continued in force the stock depreciated in value. The injunction having been dissolved, the court held that the wrongful act of securing and having served the writ of injunction, thereby preventing the plaintiff from selling his stock and realizing its value, when it had a value, was the proximate cause of the damage, and allowed the enjoined party to recover damages represented by the depreciation in value to the extent of the injunction bond given. The court said:

"The authorities are that the wrongful act of defendants in securing and having served the writ of injunction, thereby wrongfully preventing plaintiff from selling the stock and realizing its value, when it had a value, is the proximate cause of the damage sustained through the failure to sell. * * * The wrongful act of appellants caused plaintiff to lose the value of his stock. The value of his stock exceeded the penalty of the bond. He was entitled in an action on the bond to recover such damage to the extent of the penalty of the bond. * * *"

In Mansell v. British Linen Company Bank, [1892] L. R. 3 Ch. Div. 159, the plaintiff claiming certain shares as his property obtained an interlocutory injunction restraining the shareholder, until judgment or until further order, from selling or offering for sale, or otherwise dealing in, the shares without the plaintiff's consent. The injunction was issued on the plaintiff's undertaking to abide by any order the court might make as to damages, in case the court should thereafter be of opinion that the defendant sustained any by reason of its order. The plaintiff's claim having been held bad, and the injunction having terminated, the court was asked to fix the amount of the damages arising from the injunction order. It was fixed at the difference between the sum the shares would have brought, if they had been sold when the injunction was granted, and the price which would have been obtained, if they had been disposed of when the summons asking for a sale of the shares was issued.

[2] The jus disponendi is an incident of the ownership of property. The defendant Chandler had a legal right to dispose of his stock at any time. The plaintiffs wrongfully interfered with that right by depriving him of his power to sell during the period of the injunction which they wrongfully obtained. This was a direct invasion of his legal right, and the violation of a legal right imports damage. In Brett v. Cooney, 75 Conn. 338, 341, 53 Atl. 729, 731, the court said:

"The violation of a legal right imports damage. Watson v. New Milford Water Co., 71 Conn. 442, 451. The law implies it, even though, in fact, the defendant's breach of duty proved a benefit to the plaintiff. Excelsior Needle Co. v. Smith, 61 Conn. 56, 65."

If the violation of a legal right imports damage, and an injunction wrongfully interferes with one's legal right to sell his stock, the one who sues out the injunction must suffer the pecuniary loss resulting therefrom, and not the person whose legal right was invaded. The law implies damage from the mere fact that he was for a time deprived of the right to deal with the stock in any manner he saw fit. That the plaintiff is entitled to damages is clear. The amount which he is entitled to recover is the serious question to be determined.

[3] In general, it is no doubt true that the loss for which a recovery may be had in an action against a wrongdoer must be the result of the wrong inflicted. The party complaining must show, not only that he has suffered the loss, but also that it would not have been incurred, but for the wrongful act of his adversary; and the amount of the loss is as much to be proved by the plaintiff as the fact of the loss. All this is common learning. It is also true that, in assessing damages, the rule is the same in courts of law and in courts of equity. Stewart v. Joyce, 205 Mass. 371, 91 N. E. 555. In Giraud v. Moore, 86 Tex. 675, 26 S. W. 945, the Supreme Court of Texas held that, where stock is wrongfully garnished, its owner cannot recover its difference in value between the time of garnishment and the time of trial, unless it is shown the garnishment caused the depreciation, or that the owner could or would have sold it during the time.

[4] The bill of complaint alleged on information and belief that the defendants "are about to sell and dispose of the said shares of stock held by them." This bill the plaintiff, through its president, had sworn to, and the allegation was not denied by defendants in their answer. Both the special master and the District Judge thought that this sworn statement in the complaint was sufficient, in the absence of any evidence to the contrary, that Chandler wished to sell the shares. The appellant asserts, however, that this was error. The courts have held, that where a bill alleges upon information and belief, a mere denial of the allegation puts in issue only the plaintiff's information and belief, and not the truth or falsity of the facts alleged. Messer v. Storer, 79 Me. 512, 11 Atl. 275; Ex parte Reid, 50 Ala. 439; Quinn v. Leake, 1 Tenn. Ch. 67; Walton v. Westwood, 73 Ill. 125; Longes v. Kennedy, 2 Bibb (Ky.) 607, 3 Encyc. of Pl. & Pr. 363. If the bill alleges upon information and belief, and the answer makes no denial of the allegation, the defendant is entitled to the benefit of the plaintiff's admission. While a plaintiff cannot read any part of his bill as evidence to support his own case, he may read any portion of the answer as evidence in its support; and in the same way, while a defendant cannot read any part of the answer to support his position, yet the positive allegations of the bill, as far as they aid the defendant, are admissions in his favor of the facts alleged, and therefore need not be proved by him by other evidence. Whitehouse's Eq. Pr. vol. 1, § 337; Street's Fed. Eq. Pr. §§ 1582, 1583; Metcalfe v. Metcalfe (1737) 1 Atk. 63.

And under equity rule 30 (201 Fed. v, 118 C. C. A. v) it is provided: "Averments other than of value or amount of damage, if not denied, shall be deemed confessed," except as against an infant, lunatic, or other person non compos. We think the averment in the bill as to

Chandler's intentions to sell the stock was not in issue, but is to be taken as confessed. This does not help the defendant, because the allegation was only that the plaintiff believed that the defendant had such an intention.

[5] But the plaintiff in the instant case contends that no evidence was introduced by the defendant Chandler to prove that he ever made any attempt or effort to sell the 3,333 shares of stock held by him. The plaintiff, however, had made it impossible for the defendant to attempt to sell the stock by the injunction it obtained, which restrained him under the pains and the penalties of law from in any way disposing of the stock. If he had attempted to sell it in violation of the injunction, he would have committed a contempt of court. As soon as the defendant was at liberty to act, the injunction being dissolved, the evidence shows that the defendant sought to effect a transfer of the stock and that the plaintiff refused to make it. We think that this was sufficient. It proved the defendant's desire to dispose of his stock, and that he was prevented from doing so by the plaintiff's wrongful refusal to do what the defendant had a right to have done. This was an aggravation of the original wrong, which the plaintiff inflicted upon the defendant in suing out the injunction, and we think, upon the facts of this case, it not unfair to hold that the intention to sell, manifested as soon as the injunction was dissolved, relates back to the time the injunction was originally granted, and may properly be assumed as existent through the whole period that the injunction was in force and during which the plaintiff was not at liberty in any manner to negotiate the stock. Especially is this true in view of the fact that the defendant's right to damages accrued at the time the injunction was wrongfully sued out, which involved the violation of his legal rights and imported damage.

Judgment affirmed.