EDWARD J. SMITH et al., Suing on Their Own Behalf and on Behalf and for The Benefit of All Other Stockholders of Happiness Candy Stores, Inc., Similarly Situated, Plaintiffs, and BLANCHE L. KEENE et al., Plaintiffs-Interveners, v. HAPPINESS CANDY STORES, INC., et al., Defendants.

Supreme Court, Special Term, New York County, February 3, 1943.

*John Schulman* and *Alan Hays* for Edward J. Smith, plaintiff.

*Herbert A. Einhorn* for Isidore Appel, plaintiff.

*Erwin Greenberg* for Blanche L. Keene, plaintiff-intervener.

*Irving Steinman* for Anna Kleinman, plaintiff-intervener.

*John Kadel* and *Nicholas R. Jones* for Phœnix Securities Corporation, defendant.

*Frank Levien* for Happiness Candy Stores, Inc., defendant.

*Louis S. Posner* and *Harold Rosenblum* for Herbert D. Cooperman, objector-stockholder.

*Henry A. Friedman* and *Benjamin Grossman* for Benjamin Moritz et al., objectors-stockholders.

*Abraham Feit* for Samuel Gordon et al., objectors-stockholders.

HECHT, J. The factual background of this derivative action is set forth in detail in the report and opinion of the referee approving the offer of settlement, which the court is now asked to confirm and adopt.

On the hearing of the motion to confirm the report of the referee several objectors appeared who opposed the confirmation on the ground that the offer approved by the referee is wholly inadequate.

Plaintiffs in this litigation are represented by a firm of attorneys whose experience in actions of this type is extensive. They state, and in this they are supported by several other groups of stockholders represented by other attorneys, that they regard the offer made as eminently fair. In fact the transaction on which this suit is based was originally involved in prior litigation, but upon the insistence of the attorneys for the plaintiffs it was excluded from the settlement agreed upon in that action. The attorneys for the plaintiffs in the original suit appeared before this court and stated that in their opinion based upon their investigation into the facts the instant cause of action had

little chance of success and for that reason it was never pressed by them.

Prospective success in this lawsuit turns upon the probability of establishing that at the time of the purchase by defendant Phœnix of 97,210 shares of Loft stock from defendant Happiness Candy Stores, Inc., the defendant Phœnix dominated and controlled the Loft corporation, which in turn controlled the Happiness corporation, and that the sale of stock operated as and perpetrated a fraud upon the stockholders of Happiness.

Assuming that the chances of establishing this fact, essential to any recovery by plaintiffs, are in plaintiffs' favor, we then arrive at what really is the nub of the question presented by this application, namely, what measure of damages is to be applied to the facts established?

The objectors present several theories of damage. They urge that this block of stock was bought by Phœnix solely to insure control of the Guth suit in Delaware, the favorable result of which enhanced the value of Loft stock (now called Pepsi-Cola) to the point where it is now selling at thirty-four dollars a share. Therefore, the damages should be the difference between the purchase price and the present market value, plus dividends received on the 97,210 shares. This would amount to approximately $3,150,000.

In lieu of this measure of damages the objectors present a theory based on rescission. They claim that 2,000 shares of this block of stock are still held by Phœnix. At present values they are worth $68,000 plus dividends received amounting to $10,500. On the remaining 95,210 shares they claim the difference between the sales price and the market value at the time of the transaction which amounts to $69,117.75, making a total of $147,617.75.

One of the objectors has taken the position that Phœnix should account for a fair percentage or share of the benefits and profits derived by it, based upon the relative importance or value of the contribution thereto by Happiness of its 97,210 shares of Loft stock. A theory has been evolved denominating the transaction as a joint venture by Loft and Phœnix. Even if this view be adopted, in effect it would result in the first measure of damages discussed above. However, if the plea for an accounting is based upon a constructive trust's being imposed because of a breach of a fiduciary relationship, it would be necessary to show that the stock or its proceeds could be followed. The record clearly indicates that this stock was sold at a loss to Phœnix.

Reference is made to a suit in Delaware involving an entirely different set of facts which was settled by the defendant Phœnix for $1,000,000. That transaction involved 400,000 shares of Loft stock. Since the present litigation concerns approximately 100,000 shares it is urged by the objectors that a fair settlement would be one-quarter of that agreed upon in the Delaware suit, amounting in this case to $250,000; a rule-of-thumb argument, but seriously advanced by the objectors.

The plaintiffs on the other hand argue that under the circumstances presented here the measure of damages should be the difference between the sales price and the market value at the time of the transaction. The sales price was one dollar and sixty-five cents per share. The market quotation was bid price two dollars and twenty-five cents per share, and the asked price two dollars and thirty-seven and one-half cents. Taking the asked price, the difference would be $70,477.25. The authorities uphold the plaintiffs' position. (*Valentine* v. *Richardt,* 126 N. Y. 272; *Maass* v. *Rosenthal,* 125 App. Div. 452; *Stewart* v. *Joyce,* 205 Mass. 371; *Sager* v. *Friedman,* 270 N. Y. 472.) As is indicated in the *Stewart* case, any other measure of damage would " render or tend to render the damages remote and speculative." This observation is borne out in the present litigation. On September 8th, the time of the hearing before the referee, the stock was selling at twenty-one dollars per share. Three months later at the time of the hearing before the court on the proposed settlement the price had risen to twenty-seven dollars, and within the last two months since the date of the hearing it has risen to thirty-four dollars. Even if it be conceded that the 2,000 shares still in the hands of Phœnix were part of the original block involved in the present litigation, and rescission be granted as to them, the proposed settlement of $75,000 against an amount of $147,617 seems adequate and fair in view of the sharp issue of fact on the question of domination and control of Loft by Phœnix and of any fraud on the latter's part as a result thereof in the purchase of this stock.

Considering the slight ultimate benefit to the stockholders it would be an easy matter to reject the öffer and relegate plaintiffs to a trial of this lawsuit. Such action, however, would be grossly unfair to the attorneys for the plaintiffs through whose diligence this action was made possible and whose efforts have brought about this offer.

I find that the allowances recommended by the referee are disproportionate to the recovery effected for the stockholders. The report of the referee is accordingly modified to the extent

of fixing the allowance to counsel for plaintiffs at $20,000 and to each counsel for the plaintiffs-interveners the sum of $1,000. Accountants allowed $1,000 for services rendered, and the stenographer $215.25 for minutes furnished. Referee's fee fixed at $2,000.

In all other respects the report is adopted and confirmed. Settle order.